### WEISZ v. HORTON et al.

### No. 11078.

Court of Civil Appeals of Texas. Galveston.

Feb. 6, 1941.

Rehearing Denied Feb. 27, 1941.

Russel A. Bonham and Mary Nan Bonham, both of Houston, for appellant.

Jno. O. Douglas, of Houston, for appellees.

CODY, Justice.

It is appellant's main contention on this appeal that the trial court did not enter judgment in conformity with the jury's

verdict on special issues.. It is his further contention that such error is fundamental in character, and is apparent upon the face of the record. The court below entered judgment for appellant and against appellee for the principal sum of $294.02 upon the verdict aforesaid and upon the court's own independent findings, but appellant claims that if the court had entered judgment in conformity with the verdict that judgment would have been entered in his favor in the sum of $539.02; so appellant seeks not a reversal, but a reformation of the judgment of the court below.

Appellant, who was plaintiff, pled in substance: That about August 1, 1938, appellee employed him as an agent to sell certain household commodities upon a contract basis on a house to house solicitation. That the merchandise was to be consigned to him by appellee at its retail price, "and his account credited each time a sale was made and the lease contract was turned in and accepted by the defendant." That he was to receive a commission of 25%. Appellant pled a tabulated statement of the value of the merchandise which he alleged he sold each week up until November 5, 1938, together with the amounts of commission claimed thereon. The total value of the merchandise which he alleged he thus sold was $7,618.25. Appellant further alleged that "of the total contracts sold by this plaintiff $800 thereof were not accepted by the defendant, but were returned to plaintiff * * *"; and appellant alleged that his net sales totalled $6,818.25, and that the commissions thereon earned amounted to $1,704.53. Appellant alleged that the only record he made of the sales consisted of the total value of the merchandise sold by him per week, but that appellee had a complete record or set of books covering each sale in detail, showing the articles sold, the dates when sold, the names of the purchasers, etc. Appellant then pled by tabulation the sums of money which had been paid to him by appellee, together with the dates each payment was made. And the totals of such payments were alleged to be $454.13; and appellant sued for $1,250.

The allegations of appellee's answer were in substance: That he employed appellant as his agent to sell merchandise on August 5, 1938, but did not agree to pay him 25% commission. That appellant worked for him until November 5, 1938, and sold approximately $4,700 worth of merchandise. That appellee has a complete and accurate set of books as alleged by appellant, and that, as appears therefrom, appellee owes appellant only the sum of $29.57.

The court submitted the case to the jury upon two special issues, and the jury found: (1) That the total sales made by appellant during the time he worked for appellee was $7,600, and (2) That the agreed percentage that appellee was to pay appellant for compensation on sales was 15%.

The court entered the following judgment, omitting formal parts:

"That, the motion of the plaintiff for judgment upon the findings of the jury, in the above styled and numbered cause came on for hearing on this the 22nd day of December, 1939;

"That, upon due consideration of such motion, after reviewing transcript of portions of the evidence offered at the trial of the cause, and after hearing the remarks of attorneys for both the plaintiff and the defendant, the Court entered judgment for the plaintiff in the sum of $294.02.

"It is therefore, adjudged, and decreed by the court that the plaintiff, Adolph Weisz, do have and recover of the defendant, D. D. Horton, doing business as Horton–Luse Company, the sum of $294.02, and the costs of suit, for which execution may issue; to which judgment the plaintiff, through his attorney excepted, and gave notice of appeal to the court of Civil Appeals of the First Supreme Judicial District at Galveston, Texas."

The foregoing statement, with the exception of appellant's motion for judgment upon the form of judgment thereto attached, presents the "record" in this case upon which we are authorized to consider appellant's assignment of fundamental error "apparent upon the face of the record."

Appellant makes no contention that this is not a proper case for the court to exercise its function of making independent findings of fact from the evidence before him in order to supplement the jury's verdict. Indeed the appellant sought in his motion for judgment to have the court make independent findings based upon appellant's "admissions" and enter judgment on such independent findings for appellant against appellee for $539.02. Appellant's position is that there was no evidence legally before the court to support his in-

dependent findings on which he entered judgment for appellant for only the sum of $294.02.

■ It would be a formidable task for us to determine whether there was any evidence before the court to sustain his independent findings. It would involve reading the entire statement of facts, and we have no authority to search the statement of facts to see if there is any such evidence upon a mere assignment of fundamental error apparent upon the face of the record. To relieve us of doing this appellant refers in his brief to the "off the record" explanation by the court of how he arrived at the judgment which was entered, and as to the evidence on which he based his independent findings. We do not understand that "off the record" statements by the trial court are available here for holding that the trial court committed fundamental error "apparent upon the face of the record". Certainly the explanation given by the trial court of how he arrived at the judgment which he entered forms no part, at least eo nomine, of the "record". This explanation of the trial court is arranged in appellee's brief in convenient form, and, with certain elaborations, is as follows:

| | |
|---|---|
| Total contracts signed by customers | $7600.00 |
| Less "returns" | 1645.79 |
| | $5954.21 |
| 15% of $5954.21 | 891.78 |
| Cash pd by appellee to appellant | $479.13 |
| Cash collected by appellant on sales | 19.03 |
| Goods charged back | 189.60 |
| Constable Fees | 10.00 |
| Due appellant | 194.02 |
| | $ 891.78 |

To the $194.02 which the court thus found appellee owed appellant there was added $100 by the court.

Appellee has raised no objection to the addition of this $100 item against him; so the occasion for such addition is not here material.

From the foregoing tabulation it appears that the court considered it necessary to deduct the item of $1,645.79 designated "returns" from the jury's answer to special issue No. 1 in order to determine the sum upon which appellant's commission ought to be calculated. From the pleadings, from the draft of judgment which appellant moved the Court to enter, and from the statements of the parties in their briefs, we conclude that the term "returns" is used to designate the unpaid portion of the purchase price due on an article which appellee has sold at the time the contract is cancelled out with a purchaser. It seems that appellee's business is a credit one, and a sale appears to be effected in this manner: The salesman has the customer to sign a so-called "lease–contract", under which he agrees to pay "rentals" at stipulated intervals until the amount of the purchase price has been paid, whereupon the "lease–contract" becomes a sale. But if the customer quit paying, the "lease–contract" became known as a "return", and the salesman was not entitled to any commission on the unpaid purchase price of the article which was returned to appellee.

■ Appellant has made no contention that there was not actual evidence before the court to warrant the finding that appellee had proved there had been "returns" on articles sold by appellant to the extent of $1,645.79. He contends that, in legal contemplation, there was no such evidence before the Court because there were no pleadings which authorized its admission. Appellant's contention is based on the view that these "returns" are set-offs or counterclaims which appellee is seeking to avail himself of; and, of course, offsets or counterclaims must be pled with particularity to authorize proof thereof. R.S. Article 2014. This is a mistaken view. These "returns" are not choses in action upon which appellee could recover in an independent suit against appellant. And it is elementary that a set-off or counterclaim "is, or occupies the same position as, an independent suit by the defendant in the original suit against the plaintiff." 38 Tex.Jur., 293, 294, and authorities there cited. Evidence of them was obviously offered to show what were the net payments received by appellee on the "lease-contracts" obtained by appellant, and thus fix the sum on which appellant's commission should be calculated.

■ Now it will be noted from the above tabulation that the court, after finding that appellant had earned $891.78 in commissions, does offset there against payments which appellant had made appellee: cash collected by appellant belonging to appellee; goods charged back; and constable

fees. The trial court very correctly credited appellee with the payments of commissions which appellant admitted having received. But it may very well be that, as appellee had not pled the three other items which the court set off against the commissions appellant was found entitled to recover, that there was no proper evidence before the court to warrant such offsets. And had appellant assigned error thereto in such a way as to bring the error within our jurisdiction, it would be our duty to rule thereon. But appellant has merely invoked our jurisdiction to pass upon fundamental error apparent upon the face of the record. We are without jurisdiction to rule on errors, other than fundamental errors apparent upon the face of the record, unless they are regularly assigned. This is a salutary rule. Courts of record must act from the record, not upon reports as to reasons given by the trial court "off the record" for its actions.

■ Wherefore, there being no fundamental error apparent upon the face of the record, the judgment of the court will accordingly be in all things affirmed.

Affirmed.